Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
Emrah M. Sumer (State Bar No. 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

Attorneys for Plaintiff,
OREN AVIV, derivatively on behalf of
CONTEXT LOGIC, INC., d.b.a. WISH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OREN AVIV, derivatively on behalf of CONTEXT LOGIC, INC., d.b.a. WISH,<br><br>Plaintiff,<br><br>vs.<br><br>PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI EMANUEL, JOE LONSDALE, TANZEEN SYED, STEPHANIE TILENIUS HANS TUNG, and JACQUELINE RESES,<br><br>Defendants.<br><br>and<br><br>CONTEXTLOGIC, INC., d.b.a. WISH<br><br>Nominal Defendant. | Case No.:<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

1    COMES NOW the Plaintiff, Oren Aviv, by and through his undersigned Counsel, files this Verified Shareholder Derivative Complaint ("Complaint") and asserts the following allegations based upon an investigation of the relevant facts, including a review of United States Securities and Exchange Commission ("SEC") filings by Nominal Defendant ContextLogic, Inc., d.b.a. Wish ("ContextLogic," "Wish" or the "Company"), as well as reports, related litigation against ContextLogic, press releases and other public statements issued by the Company.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought for the benefit of ContextLogic against certain current and former members of its Board of Directors and executive officers. Plaintiff seeks to remedy Defendants' (defined below) breaches of fiduciary duties and other misconduct which have caused substantial losses and other damages to the Company, as further described in detail herein.

2.    According to its SEC filings, ContextLogic operates as a mobile ecommerce company in Europe, North America, South America, and internationally. The Company operates the Wish platform that connects users to merchants and also provides marketplace and logistics services to merchants. The Company also generates fees by offering advertising and logistics services to its merchants, and Wish claims to have a user base of 100 million monthly active users and 500,000 merchants.

3.    Since the Company's inception in 2010, it has incurred net losses each year. Specifically, the Company incurred net losses of $207 million, $208 million, and $129 million for the years ended December 31, 2017, 2018, and 2019, respectively, and a net loss of $176 million for the nine months ended September 30, 2020. As of September 30, 2021, the Company has had an accumulated deficit of $2.5 billion.

4.    Despite the Company's focus on e-commerce, Defendants allowed Defendant Piotr Szulczewski ("Szulczewski"), its founder and CEO, to venture into an illegal business strategy that resulted in chronic and disruptive commercial activity taking place at 10979

1  Chalon Road, Los Angeles, CA 90077 (the "Wish House")[1] to promote and market the Company.

5. Defendant Szulczewski routinely invites individuals and businesses, on behalf of the Company, to host late-night commercial events at the Wish House. The Wish House is currently zoned for residential use. Defendants have caused or allowed the Wish House to be used for a wide range of large commercial events that are often extremely loud and crowded, often lasting well into the early morning hours in violation of zoning laws and regulations. As explained further below, such activities are illegal and have caused damage to the Company.

6. On November 10, 2021 the Company announced its financial results for the quarter ended September 30, 2021 and confirmed that revenue fell nearly 40% in the third quarter and will further decline despite the holidays. In the wake of the Company's continuing disappointing financial results, the Company announced the same day that Defendant Szulczewski will be stepping down as CEO until either a successor is appointed by the Company's Board or no later than February 1, 2022; however, despite Szulczewski's disastrous tenure with the Company he was allowed to remain on the Board.

7. Plaintiff brings this derivative action to vigorously protect and vindicate the rights of the Company and for restitution to the Company for, among other things, the costs and expenses that have, and will be paid, by the Company as a result of the illegal actions alleged herein, including the costs of defending litigation filed due to the Company's illegal activities.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2), as complete diversity exists between plaintiffs and defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9. This Court also has jurisdiction over this action under Article III of the U.S. Constitution and 28 U.S.C. § 1331 because of claims arising under Section 14(a) of the

---

[1] Defendant Szulczewski is the current lessee of the Wish House, but, on information and belief, does not use it as his residence. Furthermore, on information and belief, Szulczewski has claimed Nevada residency to avoid CA taxes and the Board is aware of this potential subterfuge.

-2-
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

00120387.000

Securities Ex-change Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), and SEC regulation 14a-9 promulgated thereunder.  The Court has exclusive jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  The Court has jurisdiction over the state-law claims in accordance with 28 U.S.C. § 1367.

10.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in, and maintains operations in, this district, or is an individual who has sufficient minimum contacts with this district so as to render the exercise of jurisdiction by the district courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court under 28 U.S.C. §1391(a) because: (1) one or more Defendants either reside in, or maintain executive offices in, this district; (2) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred within this district, and (3) Defendants have received substantial compensation in this district by conducting business herein and by engaging in numerous activities that have had an effect in this district.

## THE PARTIES

### Plaintiff

12.     Plaintiff is a current shareholder of ContextLogic and has continuously held ContextLogic stock at all relevant times alleged herein.

### Nominal Defendant

13.     Nominal Defendant ContextLogic is a San Francisco, California-based global ecommerce provider, incorporated under the law of the state of Delaware. ContextLogic maintains its headquarters at One Sansome Street, 33rd Floor, San Francisco, CA 94104, and its common stock is listed on the NASDAQ under the ticker symbol "WISH."

### Defendants

14.     Defendant Szulczewski is the Company's founder.  He has served as the Company's CEO since July 2010 and in the wake of the Company's disappointing third quarter financial results, and perhaps the illegal activities described herein, resigned as the Company

CEO. He had served as Chairperson of the Board since August 2020. In 2020, Szulczewski received a total annual compensation of $78 million.

15. Defendant Julie Bradley ("Bradley") has served as a director since October 2020 and serves as Chairperson of the Audit Committee. In 2020, Bradley received a total of over $2.5 million in stock awards from the Company.

16. Defendant Ari Emanuel ("Emanuel") served as a director from November 2019 until his resignation on September 1, 2021.

17. Defendant Joe Lonsdale ("Lonsdale") has served as a director since May 2012 and is a member of the Compensation Committee.

18. Defendant Tanzeen Syed ("Syed") has served as a director since October 2016 and is the Chairperson of the Compensation and Nominating and Corporate Governance Committees.

19. Defendant Stephanie Tilenius ("Tilenius") has served as a director since August 2020 and is a member of the Audit and Nominating and Corporate Governance Committees. In 2020, Tilenius received over $2.6 million in stock awards from the Company.

20. Defendant Hans Tung ("Tung") has served as a director since January 2014 and is a member of the Audit and Compensation Committees.

21. Defendant Jacqueline Reses ("Reses") has served as a director since December 2020. According to the Company's SEC filings, Reses was appointed as the Board's Executive Chair on May 11, 2021. In connection with this appointment, Reses resigned as a member of the Company's Compensation Committee. In 2020, Reses received over $1.7 million in stock awards from the Company.

22. Defendants Szulczewski, Bradley, Emanuel, Lonsdale, Syed, Tilenius, Tung and Reses are sometimes referred to herein as the "Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

23. By reason of their positions as officers, directors, and/or fiduciaries of ContextLogic and because of their ability to control the business and corporate affairs of ContextLogic, Defendants owed ContextLogic and its shareholders fiduciary obligations of

good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage ContextLogic in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of ContextLogic and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to ContextLogic and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

24. Defendants, because of their positions of control and authority as directors and/or officers of ContextLogic, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with ContextLogic, each of the Defendants had knowledge of material non-public information regarding the Company and each was directly involved in the operations of the Company at the highest levels.

25. To discharge their duties, the officers and directors of ContextLogic were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of ContextLogic were required to, among other things:

a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**SUBSTANTIVE ALLEGATIONS**

**The Company's Disappointing Financial Results for the Third Quarter 2021**

26.     In December 2020, the Company completed its initial public offering ("IPO") of Class A common stock, in which it sold 46 million shares. Net proceeds were approximately $1.1 billion.

27.     Defendant Szulczewski owns about 18% of the Company. According to the Company's most recent Form 10-Q filed with the SEC on November 10, 2021, Defendant Szulczewski is the Company's chief operating decision-maker and makes the Company's operating decisions, assesses financial performance and allocates resources based on condensed consolidated financial information.

28.     Also on November 10, 2021, the Company issued a press release announcing the Company's disappointing financial results for the third quarter ended September 20, 2021. The Company announced that it expects fourth quarter revenue to be below third quarter revenue, despite the holidays. Furthermore, the Company's third quarter total revenue had declined approximately 39% year-over-year and 44% as compared to the second quarter.

29.     As of September 30, 2021, the Company had an accumulated deficit of $2.5 billion. The Company expects losses from operations to continue for the foreseeable future as it incurs costs and expenses related to brand development, expansion of market share, continued development of its mobile shopping marketplace infrastructure and development of other businesses.

30.     As a result of the Company's continuing disappointing financial results, Defendant Szulczewski informed the Board of his resignation as CEO, which will be effective the earlier of February 1, 2022 or the date the Board appoints a new CEO. Despite the Company's abysmal financial performance, Szulczewski is eligible, pursuant to his severance agreement, to receive a lump sum cash payment equal to 12 months of his base salary and an additional lump sum cash payment equal to 12 months of his benefit premiums. The decision to award Szulczewski with any severance payments is not a protected business judgment and

any severance payments to Szulczewski are undeserved and not aligned with the Company's shareholders' interests.

31. Surprisingly, Defendant Szulczewski was allowed to remain on the Board despite his disastrous tenure with the Company. The decision to allow Szulczewski to continue serving on the Board is also not a protected business judgment.

**Defendants Allow the Company's Marketing Strategy to Violate Numerous Laws, Ordinances and Regulations**

32. Wish has been criticized for listing poor quality or counterfeit goods, a common concern among major e-commerce sites which feature independent sellers. Customers have complained about lack of communication from sellers and quality.

33. Overall ratings on Google Play and Apple's App Store that are marked "most helpful" by users describe nightmarish experiences with shipping and customer service: items that haven't arrived after months, impossible-to-obtain refunds, unauthorized purchases after using a credit card on the site. Sites like Trustpilot, Better Business Bureau, and Complaints Board are littered with one-star ratings for the company. Wish ultimately settled a class action lawsuit alleging that it duped customers by inflating the "original" prices of products on the site to make the deals look better than they were.

34. Despite the Company's focus on e-commerce, Defendants allowed Szulczewski to venture into an illegal business strategy that resulted in chronic and disruptive commercial activity taking place at 10979 Chalon Road, Los Angeles, CA 90077 (the "Wish House")[2] to promote and market the Company.

35. Defendant Szulczewski routinely invites individuals and businesses to host late-night events at the Wish House to promote and market the Company.

36. Located in the quiet residential neighborhood of Bel-Air, a secluded community in which many residents have lived in peace and quiet for decades, the Wish House, on information and belief, is an approximately 30,000 square foot mansion valued at over $30 million dollars. It

---

[2] Defendant Szulczewski is the current lessee of the Wish House, but, on information and belief, does not use it as his residence.

has five fully-appointed bars, a two-lane bowling alley, a theater, wine cellar and 40,000 square feet of decks and land.

37. Defendants have caused or allowed the Wish House to be used for a wide range of large commercial events including promotional events for businesses, photo shoots, parties, film production, social media influencer gatherings, and more. These events are often extremely loud and crowded, often lasting well into the early morning hours.

38. By operating what amounts to ongoing commercial events in the middle of a residential neighborhood, Defendants have allowed the Company to create a public and private nuisance and allowed the Company to engage in unlawful and unfair business practices by knowingly engaging in commercial activities in violation of the relevant zoning ordinances.

39. The nuisance activity is not limited to late-night parties. The Wish House is frequently used as a location for film production. Social media celebrities (commonly known as "influencers") are invited to the house to promote their own brands alongside Wish. Photo shoots and casting calls are routinely held at the Wish House where Wish signs are prominently displayed to appear in the background of the pictures.

40. These events inundate the neighborhood with commercial traffic. Moving trucks and other commercial vehicles crowd the narrow streets. Vendors for and guests at the events park illegally on the streets. In at least one instance, on information and belief, traffic and crowding from an event at the Wish House was so congested that emergency vehicles were delayed in responding to an emergency call in the neighborhood.

41. Homeowners have repeatedly reported Defendants' commercial enterprise and disruptive events to the police and city officials and police have responded on numerous occasions to the Wish House.

42. The Wish House has been the source of significant problems for residents in the neighborhood, resulting in many complaints and calls to the Los Angeles Police Department ("LAPD") for many months. The LAPD received numerous calls for help over the past year arising out of the unreasonably loud and disruptive activities at the Wish House.

43. While the constant commercial activity takes place at the Wish House, neighboring residents are unable to quietly enjoy their own property and homes. Unreasonably loud noise can be heard inside and outside of neighbors' homes. Lights from late night parties stream into homes and traffic is blocked. Trash and debris litter the neighborhood streets after promotional parties. The once quiet neighborhood is now routinely overrun by commercial activities and large crowds.

44. Defendant Szulczewski has increased the frequency and disruption of events at the property by turning the Wish House—which is located in a strictly residential neighborhood—into a commercial event space. The Company allows Defendant Szulczewski to make the Wish House available for large-scale activities such as concerts, film production, photo shoots for modeling agencies, and large promotional parties for Wish and other companies.

45. As noted above, the activities at the Wish House have led to large amounts of trash and litter, including bottles, cigarette butts, and clothes, being discarded near the property. Some of this litter, including cigarette butts, pose an especially acute fire hazard at the present moment in time, at the end of a dry summer during California's fire season in a historic drought.

46. Unfortunately, these types of parties hosted to promote commercial businesses are common at the Wish House and occur on an almost daily and weekly basis, and have been increasing in recent months as COVID-19 restrictions have subsided, despite the pandemic's resurgence.

47. Throughout 2021, the police have been contacted repeatedly due to the significant public disturbance these events have caused.

48. Loud promotional parties are not the extent of the commercial activity taking place at the Wish House. The Wish House is routinely used for photoshoots and film productions by social media influencers. Wish signage and marketing materials are posted all around the Wish House during these shoots.

49. Hosting social media influencers at the Wish House is part of the company's business model. In its August 12, 2021, earnings call, Szulczewski explained that Wish is "answering [customers'] call by leaning into social commerce and entertaining features, such as

video review, shoppable, influencer content and more gamification, which has a unique opportunity to create moments of fun in people's lives." He went on to explain that Wish is implementing "these initiatives" by "working with a group of influencers to promote apparel products across various social media platforms."

50. When large parties and commercial events occur, attendance inevitably exceeds the capacity of the property to accommodate their cars, and attendees often illegally park on the streets. Large commercial vans and trucks frequently invade the neighborhood to accommodate the Wish House events. This forces cars into the opposing lane of traffic and pedestrians into lanes of traffic.

51. This has clogged—and at times altogether blocked—roadways surrounding the Wish House, causing a number of near misses with both cars and pedestrians. At night, there are often rows of unlawfully parked cars, sometimes with a rideshare driver double parked to the side of them, dropping off party-goers and, making it impossible for traffic to navigate around them in a safe fashion. Neighboring driveways are also often blocked by vehicles from the events.

52. In addition to the commercial events at Wish House being a clear violation of the residential zoning for the property, the events are frequently extremely loud, crowded, and chaotic.

53. The raucous events at the Wish House have significantly impacted the neighborhood and unreasonably interfered with the ability of residents, including Plaintiffs and residents in their community, to use and enjoy their property. The Wish House has repeatedly been the venue for crowded events that generate unreasonable amounts of noise, litter, traffic, in addition to a variety of unsafe behavior such as parties, concerts, and photo shoots, each often attracting hundreds of attendees and often lasting long into the night.

### The Company's April 28, 2021 Proxy Statement

54. On April 28, 2021, the Company filed the 2021 Proxy Statement with the SEC. Defendants Szulczewski, Bradley, Emanuel, Lonsdale, Reses, Syed, Tilenius, and Tung

solicited the 2021 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

55. The 2021 Proxy Statement called for Company shareholders to, *inter alia*: (1) reelect Defendants Szulczewski, Bradley, Emanuel, Lonsdale, Reses, Syed, Tilenius, and Tung to the Board; and (2) approve, on an advisory basis, executive compensation for the fiscal year ended December 31, 2020.

56. Additionally, the 2021 Proxy Statement described the Audit Committee's risk oversight function as well as its oversight of the Company's internal controls. Specifically, the Proxy Statement states that the Audit Committee is to assist the Board regarding compliance with legal and regulatory requirements, risk assessment and risk management.

57. The 2021 Proxy Statement was false and misleading because it failed to disclose that, despite the above representations, the Board, including each of its Committees, was not properly exercising its risk oversight function, leading to the Company's business strategy that failed to comply with numerous laws, ordinances and regulations regarding the Wish House. This included the Audit Committee not properly exercising oversight over the Company's legal and regulatory compliance and not adequately assessing and managing risk.

**DEMAND FUTILITY ALLEGATIONS**

58. Plaintiff brings this action derivatively in the right and for the benefit of ContexLogic to redress injuries suffered by ContextLogic as a result of breaches of fiduciary duties by Defendants. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

59. Plaintiff will adequately and fairly represent the interests of ContextLogic and its shareholders in enforcing and prosecuting ContextLogic's rights.

60. Plaintiff is an owner of ContextLogic common stock and was an owner of ContextLogic common stock at all times relevant to the Defendants' wrongful course of conduct alleged herein through the present.

61. At the time Plaintiff originally filed this action, ContextLogic's Board of Directors consisted of Szulczewski, Bradley, Lonsdale, Syed, Tilenius, Tung and Reses (the

"Director Defendants"). Each of these Board members has been named as a defendant in this action.

62. Plaintiff has not made a demand on the Board of Directors to bring the causes of action alleged herein such a demand would be futile. ContextLogic's Board of Directors at the time this Complaint was filed was unable to make an impartial determination as to whether to institute legal proceedings to redress the wrongdoing alleged herein because a majority of its members face a substantial likelihood of liability for non-exculpated breaches of their fiduciary duties to the Company by their participation or acquiescence in the wrongdoing alleged herein and/or complete failure to ensure the Company's compliance with applicable rules and regulations, and their failure to place the interests of the Company above their personal interests.

**Substantial Likelihood of Liability for the Entire Board of Directors**

63. The Director Defendants acted in bad faith by breaching their fiduciary duties in failing to adequately manage and oversee the Company that has, as alleged herein, severely affected the Company's financial condition and future prospects.

64. By failing to satisfy their fiduciary duties, Director Defendants caused irreparable reputational harm to the Company, exposed the Company to millions of dollars of liability and have potentially threatened ContextLogic's ability to exist in the future.

65. Each of the Director Defendants faces a substantial likelihood of liability in this action because of his/her failure, as a director, to assure that reliable systems of controls were implemented and functioning effectively to prevent the Company from issuing materially misleading statements. Based on the size, scope, and blatancy of the wrongdoing, the Individual Defendants must have known, or were reckless in not knowing, that the statements disseminated during the Relevant Period were materially misleading and/or omitted material information necessary not to make the statements materially misleading. Accordingly, Director Defendants face substantial exposure to liability for their total abrogation of oversight.

66. Because each of the Director Defendants faces a substantial likelihood of liability for their unexculpated breaches of duty, demand is excused.

**Additional Likelihood of Liability for the Audit Committee Defendants**

67. Defendants Bradley, Tilenius and Tung were, during the Relevant Period, members of the Audit Committee of the Company's Board of Directors. The Audit Committee is responsible, by its Charter, for the Company's compliance with legal and regulatory requirements and internal policies regarding ethical conduct. Furthermore, the Audit Committee is responsible for review of related transactions.

68. However, Defendants Bradley, Tilenius and Tung breached their fiduciary duties of due care, loyalty, and good faith because the Audit Committee failed to ensure the Company's compliance with applicable legal and regulatory requirements.

**Defendant Szulczewski Lacks Independence**

69. Director Defendant Szulczewski is the Company's CEO. Accordingly, Defendant Szulczewski's principle source of income is based on his employment with the Company. Because of his dependence on the Company for continued income, including income derived from the Wish House, he is beholden to the Company and lacks sufficient independence with which to render a disinterested decision on whether to pursue the derivative claims

**Defendants Bradley, Reses and Tilenius Lack Independence Due to Their Stock Awards**

70. Defendants Bradley, Reses, and Tilenius lack independence due to the stock awards they received in connection with the Company's IPO in December 2020. Specifically, the Company's SEC filings state Defendant Bradley received over $2.5 million in stock awards; Defendant Reses received over $1.7 million in stock awards; and Defendant Tilenius received over $2.6 million in stock awards. Because of these stock awards, Defendants Bradley, Reses and Tilenius are beholden to the Company and lack sufficient independence with which to render a disinterested decision on whether to pursue the derivative claims.

71. Lastly, Plaintiff has not made a demand on the Board of Directors to bring the causes of action alleged herein because such a demand would be a futile and useless act for the following additional reasons:

      a.     Director Defendants, because of their inter-related business, professional, and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.

      b.     The Director Defendants of ContextLogic, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise same. Each of the Director Defendants exhibited a sustained and systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness.

      c.     In order to bring this suit, a majority of the Directors of ContextLogic would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

      d.     The acts complained of constitute violations of the fiduciary duties owed by ContextLogic's officers and directors and these acts are incapable of ratification.

      e.     ContextLogic has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for ContextLogic any part of the damages ContextLogic suffered and will suffer thereby.

      f.     The actions of the directors have impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

      g.     Any suit by the directors of ContextLogic to remedy these wrongs would likely expose the Director Defendants and ContextLogic to further violations of various laws which could result in additional civil actions being filed against one or more of the Director Defendants thus they are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves.

72.     Lastly, Defendants Bradley, Emanuel, Lonsdale, Syed, Tilenius, Tung, Reses are named as defendants in the securities fraud class action Lam v. ContextLogic, Inc., et al., Case No. 3:21-cv-05411 that alleges the Company's IPO offering documents were fraudulently prepared and, as a result, contained false statements of material fact and made materially false

and misleading statements regarding the Company's business, operational and compliance policies. Because these Director Defendants face a substantial likelihood of liability for securities fraud, demand upon them is futile.

## CLAIMS FOR RELIEF

### COUNT I

### BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

73. Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

74. Defendants have violated their fiduciary duties of care, loyalty, candor and good faith owed to ContextLogic under Delaware law.

75. Defendants breached their fiduciary duties by, among other things, causing the Company to support an illegal business strategy that exposes the Company to liability.

76. As a direct and proximate result, Defendants have exposed ContextLogic to millions of dollars in potential civil liability, as well as significant legal fees and costs, for which they are liable to the Company.

77. Defendants have also undermined the Company's credibility and good name, jeopardizing its core business of consumer products.

### COUNT II

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

78. Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

79. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of ContextLogic.

80. All the payments and benefits provided to the ContextLogic Defendants were at the expense of ContextLogic.

81. Plaintiff, on behalf of ContextLogic, seeks restitution from the ContextLogic Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits,

severance payments and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

82. Plaintiff, on behalf of ContextLogic, has no adequate remedy at law.

## COUNT III

## AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 14(a) of the EXCHANGE ACT AND SEC RULE 14a-9

83. Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

84. SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), promulgated under Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

85. Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders that were contained in the 2021 Proxy Statement. The Proxy Statement proposal to Company shareholders urging them to reelect members of the Board and approve executive pay packages failed to disclose the Company's illegal business strategy involving the Wish House in violation of the Company's stated governance policies.

86. By reasons of the conduct alleged herein, Defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9. As a direct and proximate result of Defendants' wrongful conduct, the Company misled or deceived its stockholders by failing to disclose the Company's illegal business strategy which was an essential link in stockholders heeding the Company's recommendation to reelect the current Board and vote against stockholder proposals set forth in the Proxy Statements.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties and other misconduct described herein;

B. Directing ContextLogic to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and rules and to protect the Company and its shareholders from a repeat of the damaging events described herein;

C. Awarding to ContextLogic restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

E. Granting such other and further relief, including equitable relief as may be permitted, as the Court deems just and proper.

# JURY DEMAND

Plaintiff demands a jury trial.

DATED: November 22, 2021              **GREEN & NOBLIN, P.C.**


By:   /s/ Robert S. Green
         Robert S. Green

James Robert Noblin
Emrah M. Sumer
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

| | |
|---|---|
| 1 | William B. Federman |
| 2 | **FEDERMAN & SHERWOOD** |
|   | 10205 N. Pennsylvania Avenue |
| 3 | Oklahoma City, OK 73120 |
|   | Telephone: (405) 235-1560 |
| 4 | Facsimile: (405) 239-2112 |
|   | Email: wbf@federmanlaw.com |

Attorneys for Plaintiff
OREN AVIV, derivatively on behalf of
CONTEXT LOGIC, INC., d.b.a. WISH

-18-
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, _____Oren Aviv_____ declare that I have reviewed the Complaint ("Complaint") prepared on behalf of Contextlogic Inc., and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder and have been a continuous holder of Contextlogic Inc. common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

_____19/11\_\_\_\_, 2021
Date

_____
(Signature of Investor)