BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
MICHAEL J. KAHN, SBN 303289
  mjkahn@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants
PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI
EMANUEL, JOE LONSDALE, TANZEEN SYED,
STEPHANIE TILENIUS, HANS TUNG, and
JACQUELINE RESES, and Nominal Defendant
CONTEXTLOGIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OREN AVIV, derivatively on behalf of CONTEXTLOGIC, INC., d.b.a. WISH,<br><br>       Plaintiff,<br><br>    v.<br><br>PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI EMANUEL, JOE LONSDALE, TANZEEN SYED, STEPHANIE TILENIUS, HANS TUNG, and JACQUELINE RESES,<br><br>       Defendants,<br><br>and<br><br>CONTEXTLOGIC, INC., d.b.a. WISH,<br><br>       Nominal Defendant. | CASE NO. 3:21-cv-09047-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS WITH PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**<u>Hearing</u>:**<br>Date:     March 24, 2022<br>Time:     10:00 a.m.<br>Place:    Courtroom 4 – 17th Floor<br><br>Judge: Hon. Vince Chhabria |

**TABLE OF CONTENTS**

<u>Page</u>

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS .......................................................... 3

III. THE STRICT STANDARDS FOR PLEADING DEMAND FUTILITY ....................... 4

IV. ARGUMENT .................................................................................................................. 5

      A.     A Majority Of The Board Does Not Face A Substantial Likelihood Of Liability. ................................................................................................................. 6

            1.     No Director Faces A Substantial Risk Of Liability For The Oversight Claim. .................................................................................................. 6

                  a.     Plaintiff Admits Wish Has A Reporting System And Internal Controls. ........................................................................... 7

                  b.     Plaintiff Fails To Allege The Individual Defendants Knew About The Wish House Or Ignored Violations of Law. ................. 8

            2.     No Director Faces A Substantial Risk Of Liability For The Severance Agreement. ............................................................................. 9

            3.     No Director Faces A Substantial Risk Of Liability For The Proxy Claim. ................................................................................................ 11

                  a.     Plaintiff Fails To Allege A Material Misstatement Or Omission. ...... 11

                  b.     Plaintiff Fails To Allege The Proxy Statement Was An "Essential Link." ..................................................................... 12

      B.     Plaintiff Fails To Demonstrate That Any Member Of The Board Lacks Independence. ................................................................................................ 13

      C.     The Motion Should Be Granted Because Plaintiff Fails To State A Claim. ............... 15

V. CONCLUSION ................................................................................................................ 15

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Accuray, Inc. S'holder Deriv. Litig.*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) ................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................15

*Beam v. Stewart*,
833 A.2d 961 (Del. Ch. 2003) ..............................................................................5

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) .......................................................................5, 14, 15

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) .....................................................................................5

*City of Birmingham Ret. & Relief Sys. v. Good*,
177 A.3d 47 (Del. 2017) ....................................................................................6, 7

*Cowin v. Bresler*,
741 F.2d 410 (D.C. Cir. 1984) ...........................................................................13

*Desaigoudar v. Meyercord*,
223 F.3d 1020 (9th Cir. 2000) ...........................................................................11

*Fisher v. Sanborn*,
2021 WL 1197577 (Del. Ch. Mar. 30, 2021) .......................................................7

*Gaines v. Haughton*,
645 F.2d 761 (9th Cir. 1981) .............................................................................12

*Hastey v. Welch*,
449 F. Supp. 3d 1053 (D. Kan. 2020) ................................................................13

*Horman v. Abney*,
2017 WL 242571 (Del. Ch. Jan. 19, 2017) ..........................................................8

*In re Caremark Int'l Inc. Deriv. Litig.*,
698 A.2d 959 (Del. Ch. 1996) ..............................................................................7

*In re Citigroup Inc. S'holder Deriv. Litig.*,
964 A.2d 106 (Del. Ch. 2009) .......................................................................5, 13

*In re Diamond Foods, Inc. Deriv. Litig.*,
2012 WL 1945814 (N.D. Cal. May 29, 2012) ...................................................13

DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE
CASE NO. 3:21-CV-09047-VC

*In re Dow Chem. Co. Deriv. Litig.*,
   2010 WL 66769 (Del. Ch. Jan. 11, 2010) ......................................................................14

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
   2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ...................................................................10

*In re Impax Labs., Inc. S'holder Deriv. Litig.*,
   2015 WL 5168777 (N.D. Cal. Sept. 3, 2015) ....................................................................5

*In re JPMorgan Chase Deriv. Litig.*,
   2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) ...............................................................3, 12

*In re MeadWestvaco Stockholders Litig.*,
   168 A.3d 675 (Del. Ch. 2017) .........................................................................................10

*In re Molycorp, Inc. S'holder Deriv. Litig.*,
   2015 WL 3454925 (Del. Ch. May 27, 2015) ...................................................................11

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ....................................................................13

*In re Polycom, Inc.*,
   78 F. Supp. 3d 1006 (N.D. Cal. 2015) .........................................................................7, 10

*In re Textainer P'ship Sec. Litig.*,
   2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) .................................................................12

*In re TIBCO Software Inc. Stockholders Litig.*,
   2015 WL 6155894 (Del. Ch. Oct. 20, 2015)......................................................................9

*In re Verisign, Inc. Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...........................................................................13

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) ..................................................................................................10

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
   153 F. Supp. 3d 1107 (N.D. Cal. 2015) .............................................................................9

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) .............................................................................................................4

*Kelley v. Rambus, Inc.*,
   2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ...................................................................13

*Koshy v. Barbarosh*,
   2018 WL 6131215 (C.D. Cal. July 25, 2018) ..................................................................10

*Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*,
   829 F.3d 1048 (9th Cir. 2016)........................................................................................4, 9

Gibson, Dunn &
Crutcher LLP

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009) ................................................................................................6

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
    2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ...................................................................8

*Monroe Cty. Employees' Ret. Sys. v. Carlson*,
    2010 WL 2376890 (Del. Ch. June 7, 2010) ..................................................................11

*New York City Employees' Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010)......................................................................................11

*Owens v. Mayleben*,
    2020 WL 748023 (Del. Ch. Feb. 13, 2020) ..................................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
    534 F.3d 779 (D.C. Cir. 2008) .......................................................................................4

*Potter v. Hughes*,
    546 F.3d 1051 (9th Cir. 2008)........................................................................................4

*Quinn v. Anvil Corp.*,
    620 F.3d 1005 (9th Cir. 2010)........................................................................................4

*Rattner v. Bidzos*,
    2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ...............................................................9

*Rojas v. Ellison*,
    2019 WL 3408812 (Del. Ch. July 29, 2019)...................................................................7

*Rosenbloom v. Pyott*,
    765 F.3d 1137 (9th Cir. 2014)........................................................................................5

*Schwartzman v. McGavick*,
    2007 WL 1174697 (W.D. Wash. Apr. 19, 2007)...........................................................12

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ...............................................................................................7

*Swanson v. Weil*,
    2012 WL 4442795 (D. Colo. Sept. 26, 2012) ...............................................................13

*Tindall v. First Solar Inc.*,
    892 F.3d 1043 (9th Cir. 2018)........................................................................................4

*Towers v. Iger*,
    912 F.3d 523 (9th Cir. 2018).......................................................................................8, 9

*United Food & Com. Workers Union v. Zuckerberg*,
    250 A.3d 862 (Del. Ch. 2020)........................................................................................9

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v.*
*Zuckerberg*,
262 A.3d 1034 (Del. 2021) ............................................................5, 9, 14, 15

*Witchko v. Schorsch*,
2016 WL 3887289 (S.D.N.Y. June 9, 2016)..................................................13

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ...........................................................................5, 8


**RULES**

Fed. R. Civ. P. 23.1 ............................................................................... 1, 2, 4


**STATUTES**

15 U.S.C. § 78u-4(b)(1) ...............................................................................11

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 24, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 4 – 17th Floor, Defendants Piotr Szulczewski, Julie Bradley, Ari Emanuel, Joe Lonsdale, Tanzeen Syed, Stephanie Tilenius, Hans Tung, and Jacqueline Reses (the "Individual Defendants"), and Nominal Defendant ContextLogic, Inc. ("Wish", and, together with the Individual Defendants, "Defendants") will and hereby do move for an order dismissing the Verified Shareholder Derivative Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) (the "Motion").

Defendants seek dismissal of the Complaint with prejudice because Plaintiff failed to make a pre-suit demand on Wish's Board of Directors or to plead with particularity that making a demand would have been futile, as required by Rule 23.1.  Defendants also seek dismissal of the Complaint with prejudice for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6).

This Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Brian M. Lutz and Request for Judicial Notice, all records in this action, and any additional material and arguments as may be considered in connection with the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

(1)     Whether the Court should dismiss the Complaint with prejudice for failure to make a pre-suit demand on Wish's Board of Directors or to plead with particularity that such a demand would have been futile, as required by Rule 23.1 of the Federal Rules of Civil Procedure and Delaware law.

(2)     Whether the Court should dismiss the Complaint with prejudice for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.     INTRODUCTION

The Complaint should be dismissed with prejudice because Plaintiff fails to meet his threshold burden under Federal Rule of Civil Procedure 23.1 of pleading particularized facts demonstrating that he was excused from making a demand on the Wish Board of Directors prior to filing his Complaint. A plaintiff bringing a derivative action must plead that he made a demand on the board or that such a

demand would have been futile.  Here, because Plaintiff has done neither, the Court should dismiss the action with prejudice.

Plaintiff did not make a demand on the Board, so this motion turns on whether any demand would have been futile.  The law imposes an onerous obligation on plaintiffs seeking to plead demand futility.  For Plaintiff to take the *extraordinary* step of wresting control of Wish's own legal claims away from its Board, he must plead particularized factual allegations establishing that at least half of the directors on Wish's Board—who are entitled to a presumption that they can faithfully discharge their fiduciary duties—are incapable of considering a demand to bring the legal claims in the Complaint.  Plaintiff claims demand is futile because a majority of the Board either (1) faces a substantial threat of liability, or (2) lacks independence.  But Plaintiff comes nowhere close to pleading with particularity that demand is futile under either theory.

Plaintiff's substantial threat of liability theory fails as a matter of law because the misconduct alleged in the Complaint has no connection to the Board.  Plaintiff claims Wish broke the law based on alleged parking violations and noise complaints at a rental property in Los Angeles known as the Wish House.  Plaintiff seeks to hold the Board responsible for this, but there is no basis (in the Complaint or common sense) to conclude that the Board had anything to do with this alleged wrongdoing, that the Board knew these alleged residential zoning violations had occurred, or that the Board should be held accountable for this alleged misconduct.

Plaintiff's *core* claim is that the Board *knowingly* acted in bad faith by failing to oversee the Company, resulting in these purported "illegal activities" at the Wish House.  But he fails to allege any facts—let alone the particularized facts required under Rule 23.1—demonstrating that the directors even knew about the alleged problems at the Wish House.  In fact, Plaintiff does not even plead that more than a single Wish director even knew the Wish House existed.  Plaintiff's theory that the Wish directors acted in bad faith as a result of parking and noise violations at a rental property most of them are not even alleged to have known existed is nonsensical.

Plaintiff fares no better on his remaining theories that the Board faces a substantial threat of liability by causing the company to file a misleading proxy statement and approving a severance package for Wish's CEO.  On the proxy statement claim, Plaintiff does not even plead the basic

elements of a securities law violation, so there can be no question that Plaintiff fails to plead that any director faces a substantial risk of liability for this claim. But his claim suffers from a more fundamental problem: the law is clear there is no obligation to disclose the alleged breaches of fiduciary duty that Plaintiff alleges should have been disclosed. *See In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *18 (E.D. Cal. Oct. 24, 2014). And as for Plaintiff's claim that the directors breached their duties by approving a severance agreement with Wish's CEO, there are no particularized factual allegations that the Board knowingly acted in bad faith by approving this agreement.

Plaintiff's only other demand futility theory—that a majority of the Board lacks independence—also fails. This theory only works if Plaintiff pleads with particularity that at least half of the Board members are beholden to a director who is alleged to have a disabling interest in the subject matter of the lawsuit. But Plaintiff does not even attempt to make this showing. In fact, Plaintiff only alleges that certain directors are beholden to the Company, which is irrelevant because Wish is not a defendant.

The Complaint should be dismissed because Plaintiff fails to meet his threshold burden of pleading particularized facts demonstrating that he was excused from making a demand on the Wish Board of Directors. And given the nonsensical nature of Plaintiff's core theory, the deficiencies in the Complaint cannot be cured, so dismissal should be with prejudice.

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

***Wish's Business.*** Wish is a Delaware corporation headquartered in San Francisco. ¶ 13. Wish operates an international mobile ecommerce platform connecting users with merchants. ¶ 2. Wish was founded in 2010 by Piotr Szulczewski, who serves as the Company's CEO and Chairperson of its Board. ¶¶ 3–4, 14. In December 2020, Wish completed its initial public offering ("IPO"). ¶ 26.

***Wish's Board.*** Wish's Board has seven directors. ¶¶ 14–21. The Board has an Audit Committee, which helps oversee Wish's compliance. ¶ 56.

***The Wish House.*** Plaintiff's claims focus on a property leased by Wish in the Bel Air

---

[1] By summarizing Plaintiff's allegations, Defendants do not concede that the allegations are true. Citations in the form of "¶ _" or "¶¶ _" refer to the paragraphs of the Complaint. Citations to "Lutz Ex." refer to the exhibits to the Declaration of Brian M. Lutz, filed concurrently herewith. Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

community of Los Angeles (the "Wish House").  ¶ 4.  The Wish House allegedly is used for "promotional events for businesses, photo shoots, parties, film production, social media influencer gatherings, and more."  ¶ 37.  Plaintiff alleges these are "commercial activities" that violate "relevant zoning ordinances."  ¶ 38.  Plaintiff further alleges these events have led neighbors to complain to city officials and police about late-night noise, litter, and increased traffic.  ¶¶ 38–42, 45–47.  There are no allegations that the Board knew about these alleged problems at the Wish House.  In fact, other than Mr. Szulczewski, no Wish director is alleged to have even known that Wish leased this property.

***Mr. Szulczewski's Retirement as CEO.***   In November 2020, the Company entered into severance and change in control agreements with each of its executive officers, including Mr. Szulczewski, effective upon completion of Wish's IPO.  Lutz Ex. 1 at 22–23, 30.  As part of his agreement, Mr. Szulczewski is entitled to receive a lump sum cash payment equal to 12 months of his base salary and benefit premiums upon his retirement as CEO. ¶ 30; Lutz Ex. 1 at 30.  Mr. Szulczewski recently informed the Board of his resignation as CEO.  ¶ 30.

### III.    THE STRICT STANDARDS FOR PLEADING DEMAND FUTILITY

Because it is a "basic principle of corporate governance that the decisions of a corporation— including the decision to initiate litigation—should be made by the board of directors," *Kamen v. Kemper Fin. Servs., Inc*., 500 U.S. 90, 101 (1991), Federal Rule of Civil Procedure 23.1 requires a shareholder plaintiff to either "'demand action from the corporation's directors'" before bringing a derivative suit or "'plead with particularity the reasons why such demand would have been futile,'" *Tindall v. First Solar Inc*., 892 F.3d 1043, 1046 (9th Cir. 2018) (quoting *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016)).  Rule 23.1's requirements are "stringent," *Quinn v. Anvil Corp*., 620 F.3d 1005, 1012 (9th Cir. 2010), and "strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors," *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).

Where, as here, a shareholder alleges that demand is futile, Delaware law is "clear that the bar is high, the standards are stringent, and the situations where demand will be excused are rare.'" *Pirelli Armstrong Tire Corp. Ret. Med. Benefits Trust v. Raines*, 534 F.3d 779, 782–83 (D.C. Cir. 2008).[2]

---

[2]  Delaware law applies because Wish is incorporated in Delaware.  *See Tindall*, 892 F.3d at 1046.

Gibson, Dunn &
Crutcher LLP

"Demand is not excused solely because the directors would be deciding to sue themselves." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009). Rather, "[i]n the context of demand futility, 'directors are entitled to a *presumption* that they were faithful to their fiduciary duties,' and 'the burden is upon the plaintiff in a derivative action to overcome that presumption.'" *In re Impax Labs., Inc. S'holder Deriv. Litig.*, 2015 WL 5168777, at *4 (N.D. Cal. Sept. 3, 2015) (quoting *Beam v. Stewart*, 845 A.2d 1040, 1048–49 (Del. 2004)) (emphasis in original).

Although "'[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged,'" "'conclusory allegations are not considered as expressly pleaded facts or factual inferences,'" *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)), and "inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).

To determine whether demand is excused, the Court assesses for each member of the Board—and on a "claim-by-claim basis," *Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003)—"(i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; (ii) whether the director would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that is the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *United Food & Commercial Workers Union & Participating Food Indus. Emp'rs Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). Demand is futile only "[i]f the answer to any of the questions is 'yes' for at least half of the members of the demand board." *Id.* at 1059.

Because Plaintiff cannot meet this heightened pleading standard, the Complaint should be dismissed with prejudice.

## IV.    ARGUMENT

Although pleading demand futility always is difficult, Plaintiff's burden is even higher here because, pursuant to 8 Del. C. § 102(b)(7), Wish's Certificate of Incorporation exculpates the Company's directors from liability for breaches of fiduciary duty "[t]o the fullest extent permitted by

law." Lutz Ex. 2, Art. VIII, at 12.  As a result, Wish's directors cannot face "personal liability for breaches of the duty of care." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 239 (Del. 2009).  The Wish directors may only face liability for breaches of the duty of loyalty, which means Plaintiff must "allege with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper." *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017).  That is, Plaintiff must put forth particularized allegations establishing that the directors acted in "bad faith" in breach of their duty of loyalty, *id.*, meaning that "they knowingly and completely failed to undertake their responsibilities." *Lyondell*, 970 A.2d at 243–44.

Plaintiff utterly fails to make this necessary showing.  As discussed below, Plaintiff's core theory of demand futility is that a majority of the Board faces a substantial risk of liability for Plaintiff's claims.  But Plaintiff comes nowhere close to making this difficult showing because Plaintiff does not plead *any* particularized factual allegations about what the Board members knew—let alone that they were knowingly breaching their fiduciary duties.  Plaintiff's only other theory of demand futility, that a majority of the Board lacks independence, likewise fails because Plaintiff does not plead that (1) any director (let alone a majority of the Board) received a material benefit from the conduct challenged in the Complaint, or (2) even if Plaintiff had, at least half the other directors are so "beholden to" that director that they could not possibly consider asserting claims against him or her.

## A.   A Majority Of The Board Does Not Face A Substantial Likelihood Of Liability.

Plaintiff fails to plead with particularity that any single director—let alone four of Wish's seven directors—faces a substantial risk of liability.  Plaintiff asserts three theories of liability:  (1) a failure of oversight, (2) approving the separation agreement, and (3) filing a misleading proxy statement in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act").  There is no risk of liability for the first two because Plaintiff does not plead that any director knew about any wrongdoing and yet failed to remedy it.  And there is no risk of liability for the Section 14(a) claim because the alleged omission is immaterial as a matter of law and is not alleged to have directly harmed the Company.

### 1.   No Director Faces A Substantial Risk Of Liability For The Oversight Claim.

Plaintiff fails to plead that any director faces a substantial likelihood of liability for breaching

any oversight duty under the *Caremark* line of cases. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). *Caremark* imposes liability on directors who knowingly "acted in bad faith by breaching their fiduciary duties in failing to adequately manage and oversee the Company." ¶ 63. *Caremark* claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Good*, 177 A.3d at 55.

"To plead a substantial likelihood of liability under *Caremark*, a stockholder must allege particularized facts sufficient to show that (1) the directors *utterly* failed to implement any reporting or information system or controls, or (2) having implemented such a system or controls, [the directors] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of the risks or problems requiring their attention." *Fisher v. Sanborn*, 2021 WL 1197577, at *9 (Del. Ch. Mar. 30, 2021) (alteration in original). "In either case, imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Plaintiff fails to meet his pleading burden for either of the two *Caremark* prongs.

### a.   Plaintiff Admits Wish Has A Reporting System And Internal Controls.

With respect to the first prong, Plaintiff's own allegations contradict any suggestion that the directors "utterly failed" to implement a reporting system or controls. Plaintiff admits Wish has an Audit Committee that "is responsible, by its Charter, for the Company's compliance with legal and regulatory requirements and internal policies regarding ethical conduct." ¶ 67; *see also* ¶ 56 (describing "the Audit Committee's risk oversight function as well as its oversight of the Company's internal controls."). This allegation undermines any claim that the Board "utterly failed" to implement a reporting system. *See In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1014–1016 (N.D. Cal. 2015) (no *Caremark* claim where plaintiffs alleged "existence of … Audit Committee, the Committee's duties, and [] Code of Business Ethics and Conduct"); *Rojas v. Ellison*, 2019 WL 3408812, at *8–9 (Del. Ch. July 29, 2019) (similar, where plaintiff alleged that "Audit Committee was 'charged with legal and regulatory compliance'").

### b.      Plaintiff Fails To Allege The Individual Defendants Knew About The Wish House Or Ignored Violations of Law.

Plaintiff also fails to plead that the Board faces a substantial threat of liability under *Caremark*'s second prong.  To succeed under this prong, Plaintiff must plead specific facts showing that the Individual Defendants "had knowledge of certain 'red flags' indicating corporate misconduct and acted in bad faith by consciously disregarding [their] duty to address that misconduct."  *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016).  To be considered a red flag, information must be "waved in one's face or displayed so that they are visible to the careful observer."  *Wood*, 953 A.2d at 143.  This requires "particularized facts about what [the Individual Defendants] knew, when [they] knew it" and "what [they were] actually told" about the alleged red flags.  *See Horman v. Abney*, 2017 WL 242571, at *12 (Del. Ch. Jan. 19, 2017).

Plaintiff does not and cannot make this showing.  Plaintiff grounds his claim on alleged "illegal" conduct at the Wish House, where events allegedly violated zoning requirements, event "attendees often illegally park[ed] on the streets," and neighbors called the police with noise complaints.  *See e.g.*, ¶¶ 38, 42, 50.  But there is not a single non-conclusory allegation that any director knew anything about this alleged misconduct.[3]  In fact, there is no allegation that any member of the Board besides Mr. Szulczewski even knew the Wish House existed.  Plaintiff merely alleges that Defendants "allowed," "participat[ed]," or "acquiesce[d]" in the alleged wrongdoing, ¶¶ 34, 62, and claims that Defendants "must have known" about the Wish House issues "[b]ased on the size, scope, and blatancy of the wrongdoing," ¶ 65.  But Plaintiff offers no factual allegations in support of these conclusory assertions.  If anything, the "scope" of the alleged wrongdoing—alleged parking, noise, and zoning violations at a rental property—cuts *against* an inference of Board-level knowledge.

Plaintiff offers nothing more than "the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so."  *Towers v. Iger*, 912 F.3d 523, 530 (9th Cir. 2018).  "Delaware courts routinely reject" such conclusory allegations

---

[3]  To the extent Plaintiff is claiming that the Audit Committee members knew about the alleged misconduct merely because that committee "is responsible [] for the Company's compliance with legal and regulatory requirements," ¶ 67, that claim fails.  *See Wood*, 953 A.2d at 142–43 & n.19 ("Plaintiff also asserts that membership on the Audit Committee is a sufficient basis to infer the requisite scienter.  That assertion is contrary to well-settled Delaware law.").

Gibson, Dunn &
Crutcher LLP

as insufficient to plead demand futility.  *Id.*; *see also In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1122 (N.D. Cal. 2015) (dismissing complaint that failed to plead with particularity that directors had "knowledge that their conduct was legally improper"); *Rattner v. Bidzos*, 2003 WL 22284323, at *11 (Del. Ch. Sept. 30, 2003) (similar, where complaint only "allege[d] general knowledge in a conclusory fashion").  This Court should do so as well.[4]

### 2. No Director Faces A Substantial Risk Of Liability For The Severance Agreement.

Plaintiff likewise fails to plead that at least half of the Wish directors face a substantial risk of liability for approving Mr. Szulczewski's severance agreement.  ¶ 30.  "[A] plaintiff seeking to show that a director faces a substantial likelihood of liability for having approved a transaction … must plead particularized facts providing a reason to believe that the individual director was self-interested, beholden to an interested party, or acted in bad faith."  *United Food & Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 885 (Del. Ch. 2020).  Plaintiff once again fails to make this showing.

First, Plaintiff fails to plead that a majority of Wish's Board is self-interested in the severance agreement.  The only director that may have an interest in the agreement is Mr. Szulczewski, but Plaintiff fails to plead with particularity that he received a "*material* personal benefit" from the agreement, as required.  *See Zuckerberg*, 262 A.3d at 1058.  "As to materiality, the Delaware Supreme Court has rejected the suggestion that the correct standard for materiality is a 'reasonable person' standard; rather, it is necessary to look to the financial circumstances of the director in question to determine materiality."  *Wynn*, 829 F.3d at 1059.  Here, Plaintiff alleges no facts concerning the amount Mr. Szulczewski may be paid under the agreement, whether any of that unidentified amount is actually severance (as opposed to some other benefit), or whether this unidentified amount is material to Mr. Szulczewski in light of his particular financial situation.  *Contra* ¶ 14 (alleging Mr. Szulczewski's compensation).

Second, Plaintiff fails to plead that any director acted in bad faith by approving the agreement.  "The standard for demonstrating that disinterested directors acted in bad faith is a high one," *In re TIBCO Software Inc. Stockholders Litig.*, 2015 WL 6155894 at *21 (Del. Ch. Oct. 20, 2015), and will

---

[4]  Plaintiff's allegation that the Individual Defendants are defendants in a securities case about "the Company's IPO offering documents" is beside the point.  ¶ 72.  That case is not about the Wish House or any other issue in the Complaint, and has no bearing on the demand futility analysis here.

Gibson, Dunn &
Crutcher LLP

be found only "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties," *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006). Indeed, establishing bad faith is similar to the "onerous burden of proving a waste claim." *In re MeadWestvaco Stockholders Litig.*, 168 A.3d 675, 686 (Del. Ch. 2017).

Plaintiff alleges no facts about the directors or their decision to approve Mr. Szulczewski's agreement from which bad faith can be inferred. In fact, the *only* allegation Plaintiff makes is that Wish's financial performance since the IPO does not justify paying any severance. ¶¶ 28–30. But this ignores that Wish entered into the agreement *before* its IPO. *Supra* p. 4. More fundamentally, Plaintiff does not even allege that Wish actually paid Mr. Szulczewski severance. *See* ¶ 30 (alleging "*eligib[ility]*" for severance). But, even crediting Plaintiff's unsupported allegation that the Board made a "decision to award Szulczewski with [] severance payments," *id.*, there is nothing unlawful about honoring a company's agreements with a senior officer. *See Polycom*, 78 F. Supp. 3d at 1018–1020 (refusing to excuse demand for claims arising out of a separation agreement because executive "was already entitled to compensation by virtue of his preexisting contractual relationship with Polycom."); *Koshy v. Barbarosh*, 2018 WL 6131215, at *10 (C.D. Cal. July 25, 2018) (similar); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 930 (N.D. Cal. 2010) (a "board's decision to honor the corporation's contractual obligations certainly is not a business decision so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interest.").

Regardless, by claiming that the unidentified severance amount was too high, Plaintiff is simply second-guessing the Board's business judgment, without any facts alleged demonstrating that the approval of the agreement rises to the level of bad faith conduct. *See, e.g.*, *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011) (plaintiffs failed to plead particularized factual allegations that raised a reasonable doubt as to whether the company's compensation structure was implemented in good faith). This is insufficient to plead demand futility.[5]

---

[5] Plaintiff's unjust enrichment claim fails for the same reasons as his breach of fiduciary duty claim. *See In re Molycorp, Inc. S'holder Deriv. Litig.*, 2015 WL 3454925, at *11 (Del. Ch. May 27, 2015)
*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

### 3. No Director Faces A Substantial Risk Of Liability For The Proxy Claim.

Finally, Plaintiff fails to plead that a majority of the Board faces a substantial risk of liability for making allegedly misleading disclosures in the Company's April 28, 2021 Proxy Statement. ¶ 57.

Plaintiff wrongly claims Defendants violated Section 14(a) of the Exchange Act by failing to disclose that the directors were breaching their oversight duties. This supposedly rendered false or misleading an unspecified disclosure about the Audit Committee's role "regarding compliance with legal and regulatory requirements, risk assessment and risk management." ¶¶ 56–57, 85. The alleged omission purportedly deceived Wish's shareholders into reelecting the Company's directors and approving, on "an advisory basis," executive compensation. ¶ 55. Plaintiff's theory appears to be that the Board's reelection set in motion a course of events that somehow led to the alleged problems at the Wish House. Unsurprisingly, this attenuated theory poses no threat of liability to the Board.

To state a Section 14(a) claim, "a plaintiff must establish that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010). Additionally, this Exchange Act claim is subject to the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires Plaintiff to specify: "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000). Plaintiff fails to satisfy these requirements because he fails to allege (1) a material misstatement or omission; and/or (2) the proxy statement was an "essential link."

### a. Plaintiff Fails To Allege A Material Misstatement Or Omission.

Plaintiff's claim fails out of the gate because he does not identify the disclosure he contends is misleading. *See* 15 U.S.C. § 78u-4(b)(1). Instead, Plaintiff alleges the description of the Audit Committee's role regarding "legal and regulatory requirements" and "risk management" is misleading without specifying what statement he is referring to in the Proxy Statement. *See* ¶ 56.

---

("[W]here a breach of fiduciary duty claim based on the same facts and circumstances fails, the Court often dismisses the corresponding unjust enrichment claim."); *Monroe Cty. Employees' Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) (similar).

DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE
CASE NO. 3:21-CV-09047-VC

Gibson, Dunn & Crutcher LLP

Additionally, Plaintiff fails to allege specific facts about how the description of the Audit Committee's role is misleading.  Indeed, Plaintiff admits "[t]he Audit Committee is responsible, by its Charter, for the Company's compliance with legal and regulatory requirements and internal policies regarding ethical conduct."   ¶ 67.   Regardless, Plaintiff's barebones allegation that the Audit Committee was "not properly exercising oversight over the Company's legal and regulatory compliance and not adequately assessing and managing risk," ¶ 57, lacks the specificity necessary to plead a Section 14(a) claim under the PSLRA.  *See In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005) (dismissing Section 14(a) claim where "plaintiff has not identified, with the particularity required by the PSLRA" how omission rendered statements misleading); *In re JPMorgan Chase*, 2014 WL 5430487, at *22–23 (statements in proxy that board was "responsible for the oversight of management" could not form the basis for Section 14(a) claim).

Plaintiff also fails to plead any threat of liability for this claim because the supposed omission of the Board's alleged breaches of fiduciary duty is immaterial as a matter of law.  The Ninth Circuit has made clear that alleged nondisclosure of "simple breach of fiduciary duty/waste of corporate assets … is never material for § 14(a) purposes." *Gaines v. Haughton*, 645 F.2d 761, 776–77 (9th Cir. 1981). "[D]irector misconduct of the type traditionally regulated by state corporate law need not be disclosed in proxy solicitations for director elections.  This type of mismanagement, unadorned by self-dealing, is simply not material or otherwise within the ambit of federal securities laws." *In re JPMorgan Chase*, 2014 WL 5430487, at *18.  The alleged omission regarding the directors' supposed oversight failure is therefore immaterial as a matter of law, so the Individual Defendants face no threat of liability for this alleged proxy violation—let alone a substantial likelihood of liability.  *See Schwartzman v. McGavick*, 2007 WL 1174697, at *11 (W.D. Wash. Apr. 19, 2007) (dismissing Section 14(a) claim and following courts "reject[ing] claims under Section 14(a) that are essentially breach of fiduciary duty claims alleging mismanagement by directors").

### b.  Plaintiff Fails To Allege The Proxy Statement Was An "Essential Link."

Plaintiff also fails to plead a substantial likelihood of liability because Plaintiff fails to allege an "essential link" between the allegedly misleading Proxy Statement and a direct harm to the Company, as required to plead a Section 14(a) claim.  "The essential link requirement can only be

Gibson, Dunn & Crutcher LLP

established when the proxy statement at issue *directly authorizes* the loss-generating corporate action." *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *7 (N.D. Cal. Dec. 9, 2008) (emphasis in original); *see also Cowin v. Bresler*, 741 F.2d 410, 428 (D.C. Cir. 1984) ("[D]amages [that] are not a result of the corporate action authorized by the proxy statement … are not the type of damages sought to be remedied by section 14(a)."). Neither of Plaintiff's theories—that the allegedly misleading Proxy Statement led to (i) the reelection of directors who then breached their duties and/or (ii) approval of compensation on an "advisory basis"—meets this requirement. *See* ¶¶ 55, 57, 86.

With respect to the reelection of the Board, this Court has routinely held that "[a] claim that the reelection of the directors was an essential link to loss-generating corporate action because of the directors' subsequent mismanagement cannot form the basis of liability under Section 14(a)." *In re Diamond Foods, Inc. Deriv. Litig.*, 2012 WL 1945814, at *7 (N.D. Cal. May 29, 2012); *see also In re Paypal Hldgs., Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018) ("A complaint alleging generally that the mere election of directors was an essential link to the directors' subsequent wrongdoing does not satisfy Section 14(a)'s requirements"); *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1212–13 (N.D. Cal. 2007) (same).

Plaintiff's alternative theory about approving compensation fails because that vote was purely "advisory." ¶ 55. "[S]olicitation of advisory votes [] fails to plead an essential link" because "[a]dvisory votes do not authorize any corporate action." *Hastey v. Welch*, 449 F. Supp. 3d 1053, 1064, 1067 (D. Kan. 2020); *see also Swanson v. Weil*, 2012 WL 4442795, at *9 n.7 (D. Colo. Sept. 26, 2012) (similar); *Witchko v. Schorsch*, 2016 WL 3887289, at *7 (S.D.N.Y. June 9, 2016) (similar). Plaintiff's failure to plead an essential link (among the other elements of a Section 14(a) claim) means that the Wish Board members face no serious threat of liability for the proxy claim, let alone the substantial threat of liability necessary to plead demand futility.[6]

## B. Plaintiff Fails To Demonstrate That Any Member Of The Board Lacks Independence.

Plaintiff also fails to plead demand futility on the alternative ground that a majority of directors

---

[6] To the extent Plaintiff is alleging the Proxy Statement gives rise to a breach of fiduciary duty claim, that theory fails. There is no substantial risk of liability because Plaintiff does not plead that any director made a false statement, *knew* any such statement was false, or was even involved in preparing the challenged disclosure. *See generally In re Citigroup*, 964 A.2d at 133–134.

Gibson, Dunn &
Crutcher LLP

1    are incapable of exercising independent business judgment regarding a demand.  Because Plaintiff fails

2    to plead demand futility under either of his theories, his Complaint should be dismissed with prejudice.

3         To demonstrate a lack of independence, Plaintiff must overcome "[t]he key principle upon

4    which [Delaware corporate] jurisprudence is based"—that "directors are entitled to a *presumption* that

5    they were faithful to their fiduciary duties"—by pleading particularized facts showing that a director is

6    "so 'beholden' to an interested director ... that his or her discretion [in considering the demand] would

7    be sterilized." *Beam*, 845 A.2d at 1048, 1050 (emphasis in original).  Plaintiff falls well short of

8    meeting this heavy burden because Plaintiff neither alleges that (1) any director has a material interest

9    in the outcome of a demand (had one been made), nor that (2) at least half of the other directors are so

10   beholden to that interested director that they could not consider a demand.  *See Zuckerberg*, 262 A.3d

11   at 1059.

12        As a threshold matter, Plaintiff's independence allegations fail because his allegations are

13   aimed at the wrong target.  Plaintiff alleges that certain directors cannot consider a demand because

14   they are "beholden to the Company."  ¶¶ 69–70.  But that is not the relevant inquiry.  The Company is

15   not a defendant in this action, so it is irrelevant whether the Board is beholden to the Company.  The

16   question instead is whether at least half of the Board is beholden to an individual *defendant*, who would

17   have been the subject of a demand if one had been made.  *See Beam*, 845 A.2d at 1050; *Zuckerberg*,

18   262 A.3d at 1060.  Because Plaintiff misunderstands his pleading burden, the Complaint fails to plead

19   demand futility on independence grounds.

20        Regardless, Plaintiff fails to plead facts demonstrating that any director is "interested"—i.e.,

21   "someone who received a material personal benefit from the alleged misconduct" or faces a substantial

22   likelihood of liability.  *Zuckerberg*, 262 A.3d at 1059.  And "without an interested director the

23   independence of the remaining directors need not be examined."  *See In re Dow Chem. Co. Deriv.*

24   *Litig.*, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010).  Plaintiff alleges that certain directors are

25   interested because of stock awards received in connection with the Company's IPO.  ¶ 70.  But those

26   stock awards are not alleged to be a benefit "received … *from the alleged misconduct*," so they are

27   irrelevant to the demand futility inquiry.  *See Zuckerberg*, 262 A.3d at 1059; *see also Owens v.*

28   *Mayleben*, 2020 WL 748023 at *10 (Del. Ch. Feb. 13, 2020) (Delaware law does not "infer a lack of

director independence simply because that director owns stock in the company on whose board he sits; indeed, that dynamic is common and is generally regarded as a desirable alignment of incentives between fiduciaries and beneficiaries.").  And while Plaintiff alleges that Mr. Szulczewski signed the severance agreement, Plaintiff fails to plead with particularity that the agreement conferred a "*material* personal benefit" sufficient to create a disabling interest as to Mr. Szulczewski.  *Supra* p. 9.

But even if Plaintiff had pleaded that any director has a disqualifying personal interest in considering a demand, if one had been made, Plaintiff still cannot allege demand futility because he does not plead with particularity that any other director (let alone three of the remaining six) is beholden to an "interested" director.  Plaintiff merely makes the conclusory allegation that Board members have "inter-related business, professional, and personal relationships." ¶ 71(a); *see also id.* ¶ 71(c) (alleging "extensive business and personal entanglements").  But "[m]ere allegations that [directors] move in the same business and social circles, or a characterization that they are close friends, is not enough to negate independence for demand excusal purposes."  *Beam*, 845 A.2d at 1051–52.  Not only are there no particularized factual allegations about these relationships pleaded in the Complaint, but Plaintiff also fails to plead that these unidentified relationships are material to any director.  *See id.* at 1049–52; *see also Zuckerberg*, 262 A.3d at 1060–61 (discussing materiality requirement).  Plaintiff's threadbare Complaint should be dismissed for failing to plead demand futility with particularity.[7]

## C.     The Motion Should Be Granted Because Plaintiff Fails To State A Claim.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For all of the reasons that no defendant faces a substantial likelihood of liability as to any count, the Complaint also fails to state a claim.

## V.     CONCLUSION

Plaintiff's theory that the Board can be held liable for alleged parking and noise complaints at a rental property has no basis in law or common sense.  Because this fundamental flaw cannot be cured, and for all of the reasons discussed above, the Court should dismiss this action with prejudice.

---

[7]  The remaining allegations in Paragraph 71 just rehash Plaintiff's substantial likelihood of liability theory in conclusory fashion, and fail for all the reasons discussed above.

Gibson, Dunn &
Crutcher LLP

1

2    Dated: January 7, 2022

3                                        GIBSON, DUNN & CRUTCHER LLP

4

5                                        By:   */s/ Brian M. Lutz*
                                               Brian M. Lutz
6
                                         Attorneys for Defendants
7                                        PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI
                                         EMANUEL, JOE LONSDALE, TANZEEN SYED,
8                                        STEPHANIE TILENIUS, HANS TUNG, and
                                         JACQUELINE RESES, and Nominal Defendant
9                                        CONTEXTLOGIC, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP