1  BRIAN M. LUTZ, SBN 255976
   blutz@gibsondunn.com
2  MICHAEL J. KAHN, SBN 303289
   mjkahn@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
4  San Francisco, CA 94105-0921
   Telephone: 415.393.8200
5  Facsimile: 415.393.8306

6  Attorneys for Defendants
   PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI
7  EMANUEL, JOE LONSDALE, TANZEEN SYED,
   STEPHANIE TILENIUS, HANS TUNG, and
8  JACQUELINE RESES, and Nominal Defendant
   CONTEXTLOGIC, INC.

9

          UNITED STATES DISTRICT COURT

10

          NORTHERN DISTRICT OF CALIFORNIA

11

          SAN FRANCISCO DIVISION

12

13  OREN AVIV, derivatively on behalf of
   CONTEXTLOGIC, INC., d.b.a. WISH,

14            Plaintiff,

15      v.

16  PIOTR SZULCZEWSKI, JULIE BRADLEY,
   ARI EMANUEL, JOE LONSDALE,
17  TANZEEN SYED, STEPHANIE TILENIUS,
   HANS TUNG, and JACQUELINE RESES,

18            Defendants,

19

20  and

   CONTEXTLOGIC, INC., d.b.a. WISH,

21

22            Nominal Defendant.

CASE NO. 3:21-cv-09047-VC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

**Hearing:**
Date:      March 24, 2022
Time:      10:00 a.m.
Place:    Courtroom 4 – 17th Floor

Judge:  Hon. Vince Chhabria

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

I. INTRODUCTION ........................................................................................................... 1

4

II. ARGUMENT .................................................................................................................. 2

5

      A.      Plaintiff Fails To Plead Demand Futility. ..................................................... 2

6

                1.      Plaintiff Fails To Plead A Substantial Threat Of Liability Under

7

                       *Caremark.* ........................................................................................ 3

8

                2.      Plaintiff Fails To Plead Demand Futility For His Section 14(a) Claim. ........... 8

9

III. CONCLUSION ............................................................................................................. 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE
CASE NO. 3:21-CV-09047-VC

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...............................................................................................4

*Beam v. Stewart,*
 833 A.2d 961 (Del. Ch. 2003) ...............................................................................7

*Brehm v. Eisner,*
 746 A.2d 244 (Del. 2000) .......................................................................................4

*David B. Shaev Profit Sharing Acct. v. Armstrong,*
 2006 WL 391931 (Del. Ch. Feb. 13, 2006) ...........................................................7

*Emerald Partners v. Berlin,*
 726 A.2d 1215 (Del. 1999) .....................................................................................3

*Fischman v. Reed,*
 2017 WL 1166349 (S.D. Cal. Mar. 29, 2017) ........................................................6

*Gaines v. Haughton,*
 645 F.2d 761 (9th Cir. 1981) ..................................................................................8

*Hadley v. Kellogg Sales Co.,*
 243 F.Supp.3d 1074 (N.D. Cal. 2017) ...................................................................2

*Hong v. Extreme Networks, Inc.,*
 2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ........................................................9

*Horman v. Abney,*
 2017 WL 242571 (Del. Ch. Jan. 19, 2017) ............................................................7

*Hulliung v. Bolen,*
 548 F.Supp.2d 336 (N.D. Tex. 2008) .....................................................................8

*In re Accuray, Inc. S'holder Deriv. Litig.,*
 757 F.Supp.2d 919 (N.D. Cal. 2010) .....................................................................5

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
 757 F.Supp.2d 260 (S.D.N.Y. 2010) ......................................................................9

*In re Biopure Corp. Deriv. Litig.,*
 424 F.Supp.2d 305 (D. Mass. 2006) ......................................................................6

*In re Countrywide Fin. Corp. Deriv. Litig.,*
 554 F.Supp.2d 1044 (C.D. Cal. 2008) ...............................................................6, 9

Gibson, Dunn &
Crutcher LLP

*In re First Solar Deriv. Litig.*,
  2016 WL 3548758 (D. Ariz. June 30, 2016) ...................................................................5

*In re Impax Labs., Inc. S'holder Deriv. Litig.*,
  2015 WL 5168777 (N.D. Cal. Sept. 3, 2015) ................................................................6

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  282 F.Supp.3d 1074 (N.D. Cal. 2017) ..........................................................................9

*In re Zoran Corp. Deriv.Litig.*,
  511 F.Supp.2d 986 (N.D. Cal. 2007) ............................................................................9

*Kelley v. Rambus, Inc.*,
  2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ................................................................8

*Kenney v. Gertel*,
  2018 WL 4219233 (N.D. Cal. Sept. 5, 2018) ................................................................5

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
  2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ..................................................................3

*Minor v. Fedex Office & Print Servs., Inc.*,
  182 F.Supp.3d 966 (N.D. Cal. 2016) ............................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
  2012 WL 424557 (N.D. Cal. Feb. 9, 2012) ..................................................................9

*In re Polycom, Inc.*,
  78 F.Supp.3d 1006 (N.D. Cal. 2015) ............................................................................7

*Rosenbloom v. Pyott*,
  765 F.3d 1137 (9th Cir. 2014)..............................................................................4, 5, 6

*Schneider v. California Dep't of Corrections*,
  151 F.3d 1194 (9th Cir. 1998)......................................................................................6

*Simons v. Brookfield Asset Mgmt. Inc.*,
  2022 WL 223464 (Del. Ch. Jan. 21, 2022) ..................................................................2

*Towers v. Iger*,
  912 F.3d 523 (9th Cir. 2018)................................................................................2, 4, 7

*United Food & Com. Workers Union v. Zuckerberg*,
  250 A.3d 862 (Del. Ch. 2020)......................................................................................3

*Veal v. LendingClub Corporation*,
  423 F.Supp.3d 785 (N.D. Cal. 2019) ............................................................................5

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008) ........................................................................................3, 7

Gibson, Dunn &
Crutcher LLP

**RULES**

Fed. R. Civ. P. 23.1 ................................................................................................. 1, 2, 5, 7

**STATUTES**

Los Angeles County Code of Ordinances § 12.08.670 ............................................................5

Los Angeles County Municipal Code § 41.58.1 ...................................................................5

# I.      INTRODUCTION

Plaintiff's Opposition does nothing to change the conclusion that this case should be dismissed with prejudice for failure to plead particularized facts establishing that Plaintiff is excused from making a pre-suit demand on the Wish Board of Directors.  Plaintiff has abandoned his theory that members of the Wish Board supposedly lack independence to consider a demand or face a substantial likelihood of liability for approving a (nonexistent) severance package for Wish's former CEO.  Plaintiff now advances only a single theory of demand futility: that demand is excused because half of Wish's directors face a substantial likelihood of liability for the failure of oversight and securities claims asserted in the Complaint.  But as explained in the Opening Brief, Plaintiff comes nowhere close to pleading particularized facts demonstrating that any Wish director faces a substantial likelihood of liability for the zoning, noise, and parking violations that allegedly occurred at a rental property in Southern California.

To the extent these alleged ordinance violations at the Wish House could even legally give rise to a breach of a director's duty of oversight (or a "*Caremark*" claim), Plaintiff would still have to factually plead with particularity that at least half of Wish's directors **knew** about unlawful conduct at the Wish House and yet consciously took no action to remedy these problems.  The Complaint does not even try to make this showing:  Plaintiff rests on conclusory statements and assumptions, and there is not a single factual allegation that any director knew about any alleged neighborhood ordinance problems.  And Plaintiff cannot allege this because he claims that only *one* of Wish's seven directors even knew the Wish House existed.  The arguments Plaintiff makes in his Opposition—each of which requires inferential leaps not permitted under Rule 23.1 or the Federal Rules of Civil Procedure more broadly—do not cure Plaintiff's pleading failure.  Nor could they, because Plaintiff's entire theory of the case is absurd.  It is  implausible that directors of a large public company would know about house parties at a rental property, or that their failure to stop these gatherings from happening caused material harm to Wish.  If only one director even knew the house existed, then the complaint cannot, and could not ever, allege that at least half of Wish's directors knew about the purportedly unlawful conduct.  For this reason alone the Motion should be granted with prejudice.

Plaintiff also fails to plead a substantial threat of liability for his Section 14(a) claim.  Plaintiff does not address the core problem with this claim (see Opening Brief at 3, 12):  the law is clear that there is no obligation to disclose alleged breaches of fiduciary duty in a proxy statement.  Plaintiff's silence in the face of Defendants' Motion on this fundamental point tells this Court everything it needs to know.  And Plaintiff's claim fails for other reasons as well, including his failure to plead that the proxy statement directly authorized the Wish House parties that allegedly caused the Company (unidentified) losses.

This case should be dismissed because Plaintiff's unsupported and conclusory allegations cannot meet the heightened standard under Rule 23.1 for pleading that Plaintiff was excused from making a demand on the Wish Board before filing this lawsuit.  Dismissal should be with prejudice because Plaintiff's theory of liability is nonsensical.  Plaintiff has not identified any way that the host of problems with his Complaint can be cured.  Nor could he.  The Complaint should be dismissed without leave to amend.

## II.   ARGUMENT

### A.   Plaintiff Fails To Plead Demand Futility.

Plaintiff's Opposition has narrowed the demand futility inquiry.  Plaintiff fails to defend—and has thus waived—his allegations that half of the members of the Wish Board lack independence (Opening Brief ("OB") at 13–15) or face a substantial likelihood of liability for approving a severance agreement for Wish's former CEO, Piotr Szulczewski (*id.* at 9–10).  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1100 (N.D. Cal. 2017) (plaintiff waived issues not addressed in opposition brief).  Accordingly, only two questions remain:  whether the Complaint contains particularized factual allegations establishing that at least half the Board faces a substantial likelihood of liability for Plaintiff's (1) *Caremark* claim, or (2) Section 14(a) claim.  The answer to both is a clear "no," so this action must be dismissed for failure to plead demand futility.[1]

_____

[1] Plaintiff suggests in a footnote that Wish's exculpatory provision cannot be considered on a motion to dismiss.  Opp. at 9 n.3.  Plaintiff's assertion is at odds with black letter law making clear that exculpatory provisions dictate what plaintiffs must plead to establish a substantial likelihood of liability for demand futility.  *See, e.g.*, *Towers v. Iger*, 912 F.3d 523, 529 (9th Cir. 2018) (plaintiff must plead non-exculpated claim to survive motion to dismiss); *Simons v.*

*(Cont'd on next page)*

1      **1.      Plaintiff Fails To Plead A Substantial Threat Of Liability Under *Caremark*.**

2          As set forth in Defendants' Opening Brief, Plaintiff fails to plead facts demonstrating that any

3   director faces a substantial likelihood of liability under either of *Caremark*'s two prongs.  As a

4   threshold matter, Plaintiff does not contest that he fails to plead a threat of liability under the first

5   prong—which requires showing an "utter failure" to implement a reporting system at the Company—

6   because the existence of Wish's Audit Committee precludes such a finding.  OB at 7.

7          Thus, the demand futility analysis centers on *Caremark*'s second prong, which requires

8   Plaintiff to plead with particularity that the Individual Defendants "had knowledge of certain 'red

9   flags' indicating corporate misconduct and acted in bad faith by consciously disregarding [their] duty

10  to address that misconduct."  *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL

11  4076369, at *8 (Del. Ch. Aug. 1, 2016).  Plaintiff fails to make this showing.

12         As discussed in the Opening Brief (OB at 8–9), there is not a single particularized factual

13  allegation in the Complaint that any director knew about alleged zoning and noise ordinance

14  violations at the Wish House, and then made no attempt to rectify those alleged problems.  For

15  example, the Complaint contains no allegations that the Wish Board ever discussed the Wish House,

16  that it received any reporting or briefing about the Wish House, or—most importantly—that it was

17  advised of problems at the Wish House.  For this reason alone, Plaintiff fails to plead that any

18  director—let alone at least half of the Wish Board—faces a substantial likelihood of liability under

19  *Caremark*.  OB at 8–9.

20         At most, Plaintiff alleges that "Defendants allowed Szulczewski to venture into an illegal

21  business strategy" with the Wish House, ¶ 34, or variations on this theme.  But this allegation fails for

22  two reasons.  First, it is a conclusory allegation.  But "'conclusory allegations are not considered as

23

24         *Brookfield Asset Mgmt. Inc.*, 2022 WL 223464, at *11 (Del. Ch. Jan. 21, 2022) ("Where, as here, the directors are protected from liability by an exculpatory charter provision adopted pursuant to

25  8 Del. C. § 102(b)(7), 'a substantial likelihood of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.'"

26  (quoting *United Food & Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 888 n.18 (Del. Ch. 2020)); *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (same).  The primary case Plaintiff relies

27  on, *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999), is inapposite.  That case addressed whether a director was entitled to exculpation as a factual matter, not whether the

28  exculpation provision set the framework for the conduct that must be alleged to plead a substantial likelihood of liability for purposes of demand futility.  *Id.* at 1223–1224.

expressly pleaded facts or factual inferences,'" so they do not help Plaintiff plead demand futility. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)).  Indeed, Plaintiff's conclusory assertions do not even satisfy the more lenient standards of Rule 8, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth"); they come nowhere close to alleging the "particularized facts" required to meet the heightened pleading standard applicable to derivative actions, *see Towers*, 912 F.3d at 531.  Second, and more importantly, is what this allegation reveals more generally—this lone, conclusory allegation that Plaintiff points to in his Opposition only confirms the absence of any facts alleged in the Complaint demonstrating Board-level knowledge or discussion of the Wish House, let alone knowledge of any purported problems at the rental property.  *See* Opp. at 5 (citing ¶¶ 4, 34, 37–39, 44, 46–49).

Unable to point to specific facts showing an oversight failure by the Wish directors, Plaintiff resorts to a series of scattershot arguments for why the Court should simply infer that the Wish directors knew of problems at the Wish House, but consciously decided not to address them.  Each of these arguments fails because Plaintiff is not entitled to *any* inference of director knowledge. Derivative plaintiffs are only entitled to "'*reasonable* factual inferences that *logically* flow from the *particularized* facts alleged.'"  *Towers*, 912 F.3d at 528 (quoting *Brehm*, 746 A.2d at 255) (emphasis added).  Because Plaintiff only allege conclusions, not particularized facts, there is no basis in the Complaint to infer anything.

Plaintiff's arguments fail for additional reasons.  *First*, Plaintiff's argument that knowledge and ill intent by the directors can be inferred based on "the size, scope, and blatancy of the wrongdoing" fails.  Opp. at 14; *see id.* at 7 (claiming "the illegal conduct was unquestionably of significant magnitude and duration").  As Defendants already pointed out, OB at 8, there is not a single factual allegation in the Complaint about the magnitude of the alleged problems at the Wish House or their alleged impact on Wish, and Plaintiff certainly does not identify any in his Opposition. This argument also is absurd.  This case is about house parties that allegedly were too loud for some neighbors in Bel Air.  Plaintiff has not alleged that the Company paid any fine because of the alleged noise complaints, let alone that any hypothetical fine was so material to Wish that the Board would

Gibson, Dunn &
Crutcher LLP

have been aware of it.  Nor could he.  *See* Los Angeles County Code of Ordinances § 12.08.670 (noise violations punishable by a fine not more than $500); Los Angeles County Municipal Code § 41.58.1 (initial fine of $100 for "loud or unruly gatherings on residential property").[2]

  *Second*, the Court should reject Plaintiff's argument that because the alleged "commercial activity" at the Wish House relates—however tangentially—to Wish's e-commerce platform (its "largest and most essential business segment"), the Court can infer the Board knew about problems at the Wish House under the "core operations"/"core products" doctrine.  Opp. at 6.  The "core operations"/"core products doctrine", under which knowledge may in some circumstances be inferred about "critical issues pertaining to the company's core product," has no application here because the Complaint lacks *any* particularized facts establishing that events at the Wish House were an essential part of the Company's "core product," let alone that the Wish directors knew about the alleged Wish House problems.  *In re First Solar Deriv. Litig.*, 2016 WL 3548758, at *9 (D. Ariz. June 30, 2016), *aff'd sub nom. Tindall v. First Solar Inc.*, 892 F.3d 1043 (9th Cir. 2018) ("In the absence of *any* factual allegations that the [] directors were informed of the [] problem, [] the Court cannot rely on the core products doctrine to find sufficient knowledge" because "[s]uch bare reliance would eviscerate Rule 23.1(b)'s requirement that demand futility be pleaded with particularity." (emphasis in original)); *see also Kenney v. Gertel*, 2018 WL 4219233, at *6 (N.D. Cal. Sept. 5, 2018) ("The 'core operations' doctrine [] does not excuse Plaintiff from pleading particularized facts to establish demand futility."); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F.Supp.2d 919, 928 (N.D. Cal. 2010) (similar).  And even if Board-level knowledge of Wish's e-commerce platform can be inferred, that does not mean that the Board knew *everything* related to Wish's e-commerce platform, and certainly not the alleged late night activities at a rental property hundreds of miles away from Wish's headquarters.  *See, e.g.*, *Veal v. LendingClub Corporation,* 423 F.Supp.3d 785, 817 (N.D. Cal. 2019)

---

[2]  Plaintiff's citation to *Rosenbloom* only proves the inadequacy of his allegations.  Opp. at 7.  In *Rosenbloom*, plaintiffs alleged specific facts that the board received reports relating to the off-label marketing of Botox—an illegal practice that ultimately led to *$600 million* in fines and settlements.  *See* 765 F.3d at 1142, 1144–46.  This is a far cry from Plaintiff's conclusory assertions about neighborhood ordinance violations at a company rental property, which are not alleged to have caused any material harm to the company.

("'Origination fees' may be one of LendingClub's main revenue sources, but that fact does not make every piece of information within the Company that relates to those fees critical to the business's core operations."); *Fischman v. Reed*, 2017 WL 1166349, at *10 n.7 (S.D. Cal. Mar. 29, 2017) (no inference that Board of gas company knew about safety issues at one of 116 gas wells under core product doctrine).[3]

   *Third*, Plaintiff's identification of a lawsuit filed against the Company about the Wish House, Opp. at 1, 2, should be rejected out of hand because nothing about this lawsuit is alleged in the Complaint.  It is thus beyond the four corners of the Complaint and irrelevant to assessing whether Plaintiff has met his pleading burden.  *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)); *Minor v. Fedex Office & Print Servs., Inc.*, 182 F.Supp.3d 966, 977 (N.D. Cal. 2016) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint").[4]  Regardless, Plaintiff claims this lawsuit was filed *after* the alleged zoning, noise, and parking issues occurred, so it could not have served as a "red flag" of ongoing problems that the Board might have had an obligation to remedy under *Caremark*.  Opp. at 2.

   *Fourth*, Plaintiff's contention that the Court should infer that three directors acted with knowledge and intent to breach their fiduciary duties simply because they served on the Audit

---

[3]  Plaintiff's core operations cases (Opp. at 6) are easily distinguishable.  *See Rosenbloom*, 765 F.3d at 1154 (importance of Botox just one of many allegations—including particularized allegations of board knowledge—supporting an inference of scienter); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F.Supp.2d 1044, 1057–1071 (C.D. Cal. 2008) (similar, including allegations of whistleblower reports to high-level executives); *In re Biopure Corp. Deriv. Litig.*, 424 F.Supp.2d 305, 307–308 (D. Mass. 2006) (inference that directors knew FDA withheld approval of company's flagship drug).

[4]  For the same reason, the Court should disregard Plaintiff's claim that stock awards to certain defendants "were a waste of valuable corporate assets" (Opp. at 8) and that he alleges "that the Board affirmatively adopted Wish's policy of violating local and state laws" (Opp. at 7), neither of which appear in his Complaint.  Regardless, Plaintiff cannot plead demand futility based on the "conclusory allegation" that the Board pursued a "business strategy based on deliberate non-compliance with legal and regulatory requirements."  *In re Impax Labs., Inc. S'holder Deriv. Litig.*, 2015 WL 5168777, at *8 (N.D. Cal. Sept. 3, 2015) (internal marks omitted).

Committee defies legal precedent.  Opp. at 8–9.  As Defendants noted in their Opening Brief (at 8 n.3), Plaintiff's "assertion is contrary to well-settled Delaware law."  *Wood v. Baum*, 953 A.2d 136, 142–43 & n.19 (Del. 2008); *see, e.g.*, *In re Polycom, Inc.*, 78 F.Supp.3d 1006, 1020–21 (N.D. Cal. 2015) (rejecting inference of scienter based on service on Audit Committee).  Indeed, the only case Plaintiff cites *dismissed* a complaint that—like Plaintiff's Complaint—"includes no allegations that the board or audit committee or any other supervisory mechanism was ever presented with information pointing it towards the [alleged problems]."  *David B. Shaev Profit Sharing Acct. v. Armstrong*, 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006), *aff'd*, 911 A.2d 802 (Del. 2006).

*Finally*, Plaintiff's bizarre contention that scienter can be inferred from allegations that have nothing to do with the Wish House should not be credited.  Plaintiff points to allegations that Wish's CEO talked about "working with a group of influencers to promote *apparel* products across various social media platforms," that "Wish has sustained yearly losses," and that the Wish logo appeared in photos with social media influencers.  Opp. at 2, 6, 7 (citing ¶¶ 3, 34–39, 49) (internal marks omitted) (emphasis added).  These allegations say nothing about the Board's knowledge of any alleged zoning, noise, and/or parking issues at the Wish House.  Plaintiff apparently wants the Court to *assume* that Wish's directors combed social media, saw these influencers were taking pictures with the Wish logo, somehow understood the pictures were taken at a property leased by Wish, *and* must have known these photoshoots violated local zoning and noise ordinances.  This "invitation to play inferential hopscotch does not comport with Rule 23.1's stringent requirements of factual particularity."  *Towers*, 912 F.3d at 531 (quoting *Horman v. Abney*, 2017 WL 242571, at *12 (Del. Ch. Jan. 19, 2017)) (internal quotation marks omitted).

At base, "[t]his case is but another replay of other similar cases where the plaintiff failed to allege with particularity any facts from which it could be inferred that particular directors knew or should have been on notice of alleged [] improprieties, and any facts suggesting that the board knowingly allowed or participated in a violation of law."  *Wood*, 953 A.2d at 143.  Counts I and II must be dismissed for failure to plead demand futility.  *See Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004) ("Demand futility analysis is conducted on a

1   claim-by-claim basis").[5]  And this dismissal should be with prejudice because Plaintiff cannot cure

2   his implausible theory that the Board had any fiduciary responsibilities with respect to house parties

3   in Bel Air that Plaintiff does not and cannot allege affected the Company in any material way.

4       **2.      Plaintiff Fails To Plead Demand Futility For His Section 14(a) Claim.**

5       Plaintiff's Section 14(a) claim (Count III) also should be dismissed for failure to plead

6   demand futility.  As detailed in Defendants' Opening Brief, Plaintiff does not *and cannot* plead a

7   substantial likelihood of liability because his theory—that the proxy statement was misleading by

8   omitting Defendants' alleged breaches of fiduciary duty—is barred as a matter of law.  OB at 12; *see,*

9   *e.g.*, *Gaines v. Haughton*, 645 F.2d 761, 776–77 (9th Cir. 1981) *overruled in part on other grounds*

10  *by In re McLinn*, 739 F.2d 1395 (9th Cir. 1984) (en banc) ("director misconduct of the type

11  traditionally regulated by state corporate law need not be disclosed in proxy solicitations for director

12  elections.").  Plaintiff does not address, and thus concedes, this point.  Nothing more need be said;

13  this claim must be dismissed.[6]

14      Nor can Plaintiff cure the other pleading deficiencies with his Section 14(a) claim.  Plaintiff

15  does not—and, again, *cannot*—plead the "essential link" element of his claim, which requires that the

16  challenged proxy statement "'*directly authorize*[] the loss-generating corporate action.'"  *Kelley v.*

17  *Rambus, Inc.*, 2008 WL 5170598, at *7 (N.D. Cal. Dec. 9, 2008) (quoting *Hulliung v. Bolen*, 548

18  F.Supp.2d 336, 341 (N.D. Tex. 2008)) (emphasis in original); *see* OB at 12–13.  Plaintiff does not

19  claim that the proxy statement directly authorized Wish's alleged "business strategy that failed to

20  comply with numerous laws . . . regarding the Wish House."  ¶ 57.  Instead, Plaintiff claims that the

21  proxy statement permitted the re-election of Wish's directors, who later caused the Company losses

22  (though Plaintiff does not specify what those losses are) when they allegedly breached their fiduciary

23  duties by pursuing this supposed business strategy.  Opp. at 12.  This attenuated theory fails to satisfy

24

25  ───────────────

26  [5]  There is no dispute that Plaintiff's unjust enrichment claim (Count II) fails if his breach of
    fiduciary duty claim (Count I) fails, because they are based on the same alleged misconduct.  *See*
    OB at 10 n.5.

27

28  [6]  Plaintiff also does not dispute that he fails to satisfy the requirement under the PSLRA of
    identifying the specific statement he contends is misleading.  OB at 11.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE
CASE NO. 3:21-CV-09047-VC

1    the essential link requirement under Section 14(a), as the numerous authorities cited in the Opening

2    Brief make clear.  OB at 13.[7]

3            Plaintiff also fails to plead a false statement in the proxy materials.  There is nothing false

4    about the challenged description of the Audit Committee's responsibilities, which Plaintiff admits is

5    accurate.  OB at 12 (citing ¶ 67).  And since the only challenged statement in the proxy materials is

6    the unadorned description of the Audit Committee's responsibilities, there is nothing misleading

7    about not disclosing the unrelated and unsubstantiated "fact" that the committee members supposedly

8    breached their duties in connection with the Wish House.  *See, e.g.*, *Hong v. Extreme Networks, Inc.*,

9    2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) (falsity inadequately alleged where "the reasons

10   Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of

11   the statements themselves").[8]

12           Plaintiff's Section 14(a) claim is fundamentally flawed.  No additional factual allegations can

13   cure these deficiencies.  This claim should be dismissed for failure to plead demand futility, and the

14   dismissal should be with prejudice.[9]

15

16   _____

17   [7]  Plaintiff does not even try to address or distinguish these cases.  And the lone case Plaintiff cites,
     *In re Wells Fargo & Co. S'holder Deriv. Litig.*, is consistent with these authorities.  *See* Opp. at
18   12–13.  There, plaintiffs alleged that the misleading proxy directly authorized executive
     compensation, causing a loss to the company in satisfaction of the essential link requirement.  *See*
19   282 F.Supp.3d 1074, 1104 (N.D. Cal. 2017).  By contrast, in this case the shareholder vote on
     compensation was purely "advisory" and thus did not authorize anything.  *See* OB at 13 (citing
20   cases).

21   [8]  Plaintiff's cases are distinguishable because plaintiffs there alleged false statements or omissions
     that directly contradicted statements in the proxies.  *See In re Zoran Corp. Deriv.Litig.*, 511
22   F.Supp.2d 986, 1015–16 (N.D. Cal. 2007) (options backdating case with affirmative
     misstatements about option grant dates and compliance with option plans); *In re Bank of Am.*
23   *Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d 260, 300
     (S.D.N.Y. 2010) (statement that company "shall not ... pay any amounts to Employees not
24   required by any current plan or agreement ..." was alleged to be misleading by omission of
     agreement about bonuses); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
25   2012 WL 424557, at *6 (N.D. Cal. Feb. 9, 2012) (statement that company was making "efforts to
     cooperate" with government investigations misleading by omitting that company had refused to
26   provide information to government, opposed discovery requests, and filed motions to quash); *In*
     *re Countrywide*, 554 F.Supp.2d at 1076–77 ("Plaintiffs' proxy allegations are not limited to a
27   failure to disclose a breach of fiduciary duty").

28   [9]  The Complaint also should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) for
     all the same reasons that Plaintiff fails to plead a substantial likelihood of liability for any of his
     claims.

1

### III.   CONCLUSION

2          For the foregoing reasons and the reasons stated in the Opening Brief, this action should be

3  dismissed with prejudice.  While Plaintiff has requested leave to amend (Opp. at 14), Plaintiff offers

4  no explanation of how he can cure the problems with his Complaint.  Nor could he.  Plaintiff has not

5  identified any facts that would support his wildly implausible theory that the Board knew about house

6  parties in Bel Air, let alone knew these events allegedly violated local ordinances, or that these

7  neighborhood ordinance violations caused material harm to Wish.  And Plaintiff's Section 14(a)

8  claim has no factual support and no basis in law.  This deeply flawed case should not proceed any

9  further.

10

11  Dated: March 4, 2022

12                                          GIBSON, DUNN & CRUTCHER LLP

13

14                                          By:  */s/ Brian M. Lutz*
                                                      Brian M. Lutz
15
                                            Attorneys for Defendants
16                                          PIOTR SZULCZEWSKI, JULIE BRADLEY, ARI
                                            EMANUEL, JOE LONSDALE, TANZEEN SYED,
17                                          STEPHANIE TILENIUS, HANS TUNG, and
                                            JACQUELINE RESES, and Nominal Defendant
18                                          CONTEXTLOGIC, INC.

19

20

21

22

23

24

25

26

27

28